# Elliott *versus* Smith.

1. A tenant, generally, cannot dispute the title of his landlord, nor can he purchase an outstanding title and under it withhold the possession from his landlord; but when he becomes the owner of the title under which his landlord claims, either by purchase from the landlord or at sheriff's sale under a judgment which encumbers it, he may defend his possession.

2. The tenant was not estopped from setting up his title as a purchaser at sheriff's sale of the interest of the person under whom his landlord claimed, because he had made an ineffectual attempt to enforce a mortgage against the same land which was successfully resisted by the plaintiff who alleges it as an estoppel.

ERROR to the Common Pleas of *Bradford county*.

This was an action of ejectment brought in August, 1848, by Thomas Elliott v. Israel Smith, for thirty acres of land. It was tried at a special Court before WHITE, J.

See the case of Elliott v. Ackla, 9 *Barr* 42.

On the 17th June, 1842, Benjamin Ackla obtained a warrant for 170 acres of land on the west side of the Susquehanna river, in the township of Towanda, Bradford county, on which he had previously resided a length of time. On part of the plaintiff in error, it was alleged that Amos, son of Benjamin Ackla, about the time of the issuing of the warrant, under an agreement with his father that he would give him 30 acres off the lower end of the tract, took possession of it, built one or two houses and a barn

on it, and also planted an orchard and cleared and improved the whole of the 30 acres, and personally cultivated it himself until the        day of        1843, when he leased the same to the defendant, Israel Smith, for the term of five years, at the rent of $55 per year. The right of *Amos* Ackla was sold on a judgment obtained against him in September, 1843, and on the 5th May, 1847, Thomas Elliott, the plaintiff, received from the sheriff a deed therefor.

It was alleged on part of Smith, the defendant, that Amos Ackla had no title by parol from his father to this land, but was merely the tenant at will of his father, who remained the owner of the same up to the time of his death, which took place in May, 1835. That in April, 1835, Henry W. Tracy obtained a judgment against *Benjamin Ackla* for $79.84, which was revived against his executors after his death. That on a sale of the 170 acres on this judgment, Israel Smith, the defendant, became the purchaser at sheriff's sale, and received a deed for the same on the 13th September, 1844. That he thus acquired the right of his landlord, Amos Ackla, and the tenancy on his part ceased.

In answer to this part of the defendant's case, the plaintiff showed that on the 22d day of September, 1826, Benjamin Ackla and Hannah his wife, in consideration of $3000, executed a deed to John Ackla of the whole of the 170 acres covered by the warrant to B. Ackla, and took a bond and mortgage to Benjamin Ackla and wife, to secure the payment of the purchase-money, the mortgage being duly recorded. That on the 21st June, 1843, a *scire facias* was issued on this mortgage by Hannah Ackla, who survived Benjamin Ackla, against John, the mortgagor, and Edward Overton and others, and Israel Smith, terre tenants. That " on the 14th February, 1845, judgment was entered in favor of Israel Smith for one acre of land, and the mill thereon and appurtenances in his possession as terre tenant of George Tomb, it being the same land described in a certain deed from Benjamin Ackla and Hannah his wife to Daniel Cole and William Sill, dated 21st September, 1846, recorded, &c., *it being admitted that the said deed is a good and legal defence for the land thereby conveyed.*" On 3d September, 1846, John W. Sweet and G. A. Holden were released from the suit, and E. Overton and Julius Holden *plead payment, release, &c., and that the mortgage is no lien on the lands held by them.* On the 4th September, 1846, " the jury found in favor of Julius S. Holden, terre tenant, for six acres of land described in a deed from William Ackla and Hannah Ackla to said Julius Holden and J. W. Sweet, dated February 9, 1847; and in favor of the plaintiff for the residue of the land, for the sum of $2790, with costs." September 4, 1846, rule to show cause why a new trial should not be granted. December 7, 1846, death of plaintiff was suggested, and Israel Smith substituted, and the rule

[Elliott *v.* Smith.]

for a new trial discharged. On the 17th day of September, 1846, Hannah Ackla and Israel Smith entered into an agreement, by which, after reciting the above verdict on the mortgage on which judgment was expected to be obtained at the next term, *and that the mortgage was a lien on the farm which Benjamin Ackla had conveyed to John Ackla, being for the purchase-money,* Hannah Ackla assigned the mortgage and the judgment to be obtained thereon (excepting $125 to Benjamin T. Case, and a reasonable fee to counsel), to Israel Smith, in consideration of certain covenants on the part of Israel Smith. And Israel Smith, by that agreement, "*released all claim against the estate of said Benjamin Ackla, if any remain unsatisfied in carrying the above article into effect.*"

In 1847, the judgment obtained on this mortgage was reversed by the Supreme Court and a new trial ordered. See 6 *Barr* 228, Ackla *v.* Ackla.

On the 11th September, 1848, the trial of the suit on the mortgage came on again in the name of Israel Smith, administrator of Hannah Ackla, against John Ackla, mortgagor, and Edward Overton and Julius Holden, terre tenants. Israel Smith having given in evidence the deed to John, and his bond and mortgage, rested.

The defendants gave in evidence the deed of 21st September, 1826, of B. Ackla and wife, to Daniel Cole and William Sill, of the one acre mill seat. Also, the will of Benjamin Ackla, dated 14th April, 1835, by which he devised the whole land in his warrant to his sons Amos, John, Jonathan, Benjamin, Jr., and William, in certain shares, charging the portion devised to William with maintenance of his widow. Also the deed of 9th February, 1837, of William Ackla and Hannah Ackla, to Julius S. Holden, of the 6 acres before mentioned, as well as other deeds to Holdens and Sweet of other 6 acres of William's part, and of the whole of Benjamin and Jonathan's share, all which had become vested in Julius Holden. Also that Edward Overton became the purchaser at sheriff's sale of the residue of William's share (subject to the maintenance of the widow), which was sold on a judgment in favor of H. Mix, against *William* Ackla, and received a deed therefor on the 14th September, 1837. On the 16th September, 1839, Overton sold to *John* Ackla and took a judgment for the purchase-money. John took possession of the land, and maintained his mother up to the time of her death. Under this judgment there was a sheriff's sale and deed to Overton, dated the 15th December, 1842, of the whole of the land conveyed to John by Benjamin Ackla. On the 12th May, 1843, Edward Overton leased to John Ackla his (John's) portion, and the remaining portion of William, binding him to maintain his mother. It was alleged on part of the plaintiff in error, that soon after Benjamin Ackla's death the sons

M

claimed a share of their father's land *under his will*, except John and Amos.   That Amos claimed he had a good title to his portion, irrespective of the old man's will; and John claimed the whole under the deed.   It was however alleged on the part of the defendant in error, that there was no proof that Amos Ackla claimed that he had a good title, irrespective of *the will*.   It was further stated on part of the plaintiff in error, that *John* consulted Overton, who advised him that his title was good under his deed.   After some time an arrangement was entered into by John and his mother, with the other sons' consent, that the land should be divided among the sons according to the terms of the will, and that the mother should be maintained out of William's portion. On the running out of these portions subsequently by a surveyor, *John* was dissatisfied, and said he would claim the whole under *his deed;* but afterwards it was arranged between them by John's taking, with the part given him under the will, a piece of that part devised to William, being a portion of the orchard.   Subsequent to the last arrangement, the sons and those to whom they sold had respectively occupied the portions devised to them, and the widow had claimed and received her maintenance from William's portion. That John Ackla assented to the purchase made by Julius Holden from William Ackla.

As a rebuttal of this, *the plaintiff* introduced John Ackla as a witness, who denied ever having made any such arrangement, only on condition of his brothers' repaying to him what he had paid on the mortgage, which was $700; and alleged that they had never paid him any part of this money.

There was given in evidence the record of a suit in ejectment brought by John against Julius Holden, S. Holden, G. A. Holden, and John W. Sweet, for forty acres of this land on the 17th of August, 1839.

Other evidence was given by each of the parties.

The plaintiff in this present suit showed that he held the land in trust for Edward Overton, who had paid the purchase-money.

For a summary of some points submitted on part of plaintiff, see assignments of error.

June, 1853, verdict for the defendant.

It was assigned for error,—1. That the Court erred in the answers to the 1st, 2d, 3d, and 4th points (being virtually one point), in which they were requested to charge that Smith, the defendant, was estopped from setting up his title in this suit, and which was answered in the negative.

2. In charging, in answer to the 4th point on part of plaintiff, that the defendant was not estopped by the proceedings and judgment on the mortgage from setting up his title under the Tracy judgment as a defence in this suit.

[Elliott v. Smith.]

*Overton*, for plaintiff in error.—It was contended that a tenant could not dispute the title of his landlord. 2. Israel Smith claimed under a sheriff's deed (on a lien commencing the 24th of April, 1835), dated 13th of December, 1844, on a sale made the 10th of May, 1843. The deed from Benjamin Ackla and Hannah his wife to John Ackla, and the mortgage by John to them, are dated the 19th of September, 1826. The *scire facias* on this mortgage, in which Israel Smith was one of the defendants, issued on the 21st of June, 1843. On the 14th of February, 1845, judgment was entered in favor of Israel Smith for the one acre mill lot. On September 3, 1846, trial was had, and a verdict in favor of Julius Holden for six acres of land, and for the plaintiffs for $2970 with costs.

Israel Smith's title was repugnant to that upon which the validity of the mortgage depended, and not having set it up as a defence to the whole claim on the mortgage, he was estopped for ever afterwards from claiming under it. He admits the right of Benjamin and Hannah Ackla to release from the mortgage and thus perfect John's title. If the defendants against whom the judgment was had, in any way settled or got a release from this mortgage, their title could not have been questioned by him. As to estoppel was cited 17 *Ser. & R.* 364; also *Greenleaf Ev.* p. 25; 8 *John. Ch.* 268; *U. S. Eq. Dig.* 428, pl. 43; *Id.* p. 551.

*Elwell*, contra.—The first point was before the Court in the case of Elliott v. Ackla, 9 *Barr* 42. When Amos Ackla leased the premises to Smith, the former claimed as devisee under his father's will. In ejectment by the landlord against the tenant, the latter may show that the landlord's title had *expired :* 4 *Term Rep.* 682 ; 1 *W. & Ser.* 496 ; 3 *Watts* 223, Young v. Algeo.

Second point.—The decision in 9 *Barr* 42, before referred to, is a sufficient answer to this point. It is there distinctly held, contrary to the doctrine here contended for, that if Amos Ackla held under his father's title, the sale to Smith, on Tracy's judgment, gave him a title on which he could hold the land. There was no proof to sustain the assumption in this point that John Ackla and his mother made any arrangement. The father controlled what of the property he pleased in his lifetime; and by his will divided it among his children, who took and held it substantially in accordance therewith.

As to the 4th point. It was in substance, that, although the property belonged to Benjamin Ackla in his lifetime, and the judgment of Tracy against him was a lien on the land, and the sale under that judgment gave Israel Smith a perfect title, he is now estopped from setting up that title, because he attempted to collect the mortgage given by *John* Ackla.

If he had succeeded in his attempt, this would be law. But he

did not. It appeared that John, Benjamin, and Hannah Ackla treated the deed to John, and the mortgage by him, as a nullity. The facts proved were substantially as stated in the case of Ackla *v.* Ackla, 6 *Barr* 228, which was a writ of error to the first verdict and judgment in favor of Hannah Ackla upon the mortgage. Overton's judgment against *John* was not obtained until 1840, about five years after the land had been divided among the devisees under the will. He subsequently recognised the validity of the will, by selling to John the part of William, as devised by the will, &c. This was before Smith purchased the property as the property of Benjamin Ackla.

It is alleged by Overton that Smith is estopped, because he entered into an agreement with Hannah Ackla, in 1846, to purchase of her the mortgage and the judgment when obtained thereon ; and that, after the death of Hannah Ackla, he was substituted upon the record as her administrator, and in that capacity attempted to enforce the mortgage.

But Overton was not injured by that agreement. He was not misled by it. He was not a party to the agreement, nor did it in any way prejudice his defence against the mortgage. The result of the mortgage suit was the same as if that agreement had not been made.

To constitute the species of estoppel here set up, " at least three ingredients seem to be necessary : First, misrepresentation or wilful silence by one having knowledge of the act : Second, the actor, having no means of information, was by the conduct of the other induced to do what otherwise he would not have done : and thirdly, that injury would ensue from a permission to allege the truth. And these three things must appear affirmatively :" Commonwealth *v.* Moltz, 10 *Barr* 531. " Where no injury has in fact arisen from the declarations or conduct of the party, he is not estopped :" Miller *v.* Cresson, 5 *W. & Ser.* 306, per ROGERS, J. ; Dezell *v.* Odell, 3 *Hill* 219 ; S. P. Patterson *v.* Lytle, 1 *Jones* 56, per COULTER, J. ; Paul *v.* Squibb, 2 *Jones* 296.

The opinion of the Court was delivered by

KNOX, J.—The facts in evidence in this case were fairly submitted to the jury, and the law applicable to the facts clearly and correctly stated by the learned Judge who presided at the trial in the Common Pleas.

A tenant cannot dispute the title of his landlord, nor can he purchase an outstanding title, and under it, withhold the possession from his landlord. When, however, he becomes the owner of the very title under which his landlord claims, either by purchase from the landlord, or at sheriff's sale upon a judgment which encumbers it, he is not bound to give to another that which rightly belongs to himself.

[Elliott *v.* Smith.]

There is no pretence for saying that Smith was estopped from setting up his title as a purchaser of Benjamin Ackla's interest, because he had made an ineffectual attempt to enforce a mortgage against the same land, which was successfully resisted by the very party now seeking to use it as an estoppel.

When the jury found that Benjamin Ackla was the owner of the land at his death, which they did by negativing the sale to John and the gift to Amos, the plaintiff's case was hopeless.

Judgment affirmed.